### TELWELL, INC., Petitioner

v.

### PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM and Grandbridge Real Estate Capital LLC, Respondents.

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2014.

Decided April 2, 2014.

---

Paul J. Drucker, West Chester, for petitioner.

Thomas O. Williams, Camp Hill, for respondents.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

In the matter presently before this Court we are asked to determine whether the Board of Claims (Board) has jurisdiction pursuant to Section 102(f.1) of the Commonwealth Procurement Code (Code), 62 Pa.C.S. § 102(f.1),[1] to consider a breach of contract claim arising from a contract between the Public School Employees' Retirement System (PSERS) and Telwell, Inc. (Telwell) wherein Telwell borrowed $2.6 million from PSERS to refinance a property it owned. The Board concluded that it did not have jurisdiction because, pursuant to Section 102(f.1), the Code does not apply to loans and dismissed with prejudice Telwell's "Restated Claim for Breach of Claim/Duty of Good Faith" (Restated Claim) against PSERS and Grandbridge Real Estate Capital LLC (Grandbridge) (together, Respondents). On appeal, Telwell argues that the Board has broad jurisdiction to consider both Code and non-Code disputes and the Restated Claim was filed pursuant to and in conformity with Chapter 17 of the Code, thereby providing the Board with jurisdiction that cannot be restricted by Section 102(f.1). Additionally, Telwell and Respondents agree that, if this Court holds that the Board does not have jurisdiction, the Board should have transferred Telwell's claims against Grandbridge, a private entity, to the Court of Common Pleas of Philadelphia County (trial court) for the trial court's consideration. Because we agree with the Board that the plain language of Section 102(f.1) renders the Code, which now includes both the Board's enabling and jurisdictional provisions, inapplicable to loans made by the Commonwealth of Pennsylvania (Commonwealth) or a Commonwealth agency, we are constrained to affirm the Board's Order to the extent it holds that it does not have jurisdiction, rendering PSERS immune from suit. However, we vacate the Board's Order dismissing Telwell's claims against Grandbridge and remand for the Board to transfer those claims to the trial court for further proceedings.

## I. History

In 2003, Telwell borrowed $2.6 million from PSERS to refinance a Telwell Property in Philadelphia. (Board Op. at 1.) PSERS and Telwell executed a Permanent Loan Commitment (Commitment) that set forth the terms of the loan, including the interest rate to be paid. (Board Op. at 1.) Telwell also signed a Balloon Mortgage Note (Note) that provided terms of payment and an interest rate for the loan. (Board Op. at 1.) Grandbridge collected Telwell's payments and serviced the loan. (Board Op. at 1–2.) In June 2011, Telwell pre-paid the remaining balance of the loan and discovered that the interest rate in the Commitment and the interest rate in the Note were different. (Board Op. at 2.) As a result, Telwell believed it was overcharged interest on the loan. (Board Op. at 2.)

In August 2011, Telwell filed a complaint against Respondents in the trial court alleging breach of contract. (Board Op. at 1.) Respondents filed preliminary objections asserting, *inter alia*, that the trial court lacked jurisdiction over Respondents and the subject matter. (Board Op. at 1.) The trial court sustained the preliminary objections and ordered that the breach of contract claim be transferred to the Board.[2] (Board Op. at 1.) Telwell filed the

---

1. Subsection (f.1) was added by Section 1 of the Act of December 3, 2002, P.L. 1147, 62 Pa.C.S. § 102(f.1). Section 102(f.1) states, *inter alia*, "This part does not apply to loans."

2. Other counts were dismissed pursuant to the gist-of-the-action doctrine. (Board Op. at 1.)

Restated Claim, averring that Respondents breached the loan contract and owed it approximately $500,000 due to an overcharge of interest on the loan, which represents the difference between the interest rates in the Commitment and the Note. (Board Op. at 1.) Respondents filed an Answer and New Matter, asserting that the Commitment governs the loan terms and denying that they breached any contract with Telwell. (Board Op. at 2.) Respondents did not challenge the Board's jurisdiction in their Answer and New Matter. (Board Op. at 2.) The parties engaged in discovery. (Board Op. at 2.) On May 17, 2013, Telwell filed a Motion for Summary Judgment on the issue of liability, to which Respondents filed answers. (Board Op. at 2.) In its answer, PSERS raised several issues which it contended precluded summary judgment, including that the Board did not have subject matter jurisdiction pursuant to Section 102(f.1) of the Code. (Board Op. at 2.) Grandbridge also filed a Motion for Summary Judgment. (Board Op. at 2.) The Board gave the parties the opportunity to brief the issue of the Board's jurisdiction over the Restated Claim, and Telwell and Respondents filed briefs setting forth their positions. (Board Op. at 2–3.)

## II. The Board's Opinion

In determining whether it had subject matter jurisdiction over the Restated Claim, the Board examined whether the language of Sections 102(f.1) and 1724(a)[3] of the Code (setting forth the Board's exclusive jurisdiction), when read together, precluded it from having subject matter jurisdiction. The Board recognized its 200 year history of having broad jurisdiction over contracts entered into by the Commonwealth and cited several recent cases, including *Hanover Insurance Co. v. State Workers' Insurance Fund*, 35 A.3d 849 (Pa.Cmwlth.2012), and *Department of Health v. Data–Quest, Inc.*, 972 A.2d 74 (Pa.Cmwlth.2009), which reaffirmed that broad jurisdiction. The Board further noted that, if it did not have jurisdiction over the contract here, a non-Code contract involving a loan, "there would be no exception to sovereign immunity and, therefore, no possibility for [Telwell to obtain] redress against the Commonwealth." (Board Op. at 5 n. 1 (citing *Scientific Games International, Inc. v. Department of Revenue*, —— Pa. ——, ——, 66 A.3d 740, 756 (2013) (*Scientific Games II* )).)After applying certain principles of statutory construction, including reviewing the legislative history of Act 142 of 2002[4] (Act 142), which, *inter alia*, repealed Section 4 of the Board of Claims Act[5] and amended the Code,[6] the Board concluded that "a literal but expansive reading of Section 1724(a)" would provide the Board with jurisdiction over some non-Code contracts. (Board Op. at 15 and n. 7.) The Board noted that a broad reading of its jurisdiction "ultimately serves the best interest of the Commonwealth by providing parties contracting

3. 62 Pa.C.S. § 1724(a).

4. Act of December 3, 2002, P.L. 1147, No. 142.

5. Act of May 20, 1937, P.L. 728, *as amended, formerly*, 72 P.S. § 4651–4 (which provided, in relevant part, that the Board "shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth").

6. The Board concluded that the legislative history indicated that the General Assembly did not intend to materially alter the Board's jurisdiction beyond removing from that jurisdiction claims made against the Department of Public Welfare by medical assistance providers and by allowing nonmonetary relief to be sought in another forum to the extent otherwise provided for by law. (Board Op. at 9–13.)

with a Commonwealth agency assurance that it may rely upon the agency to fulfill its obligations as well, avoiding the economic disruption that may result from public knowledge of a contrary holding." (Board Op. at 15 n. 7.)

■ Notwithstanding its position that it has broad jurisdiction, the Board nevertheless concluded that it did not have subject matter jurisdiction over the contract here. The Board held that the plain and unambiguous language of Section 102(f.1), added by Act 142, explicitly states that "Part I of the . . . Code (which part now includes *all* of the Board's enabling provisions) is *not applicable* to certain activities of the Commonwealth, including *loans.*" (Board Op. at 16 (emphasis in original).) The Board stated that, because it could not "reach the constitutional issues raised by the manner of Act 142's passage [7] and can find no alternative construction of [its] enabling provisions which would allow the Board to assert jurisdiction over the claim here at issue, [it] must dismiss this action for lack of subject matter jurisdiction." (Board Op. at 16.) Telwell now petitions this Court for review.[8]

### III. The Board's Jurisdiction

#### a. Legal Background

■ The question of whether the Board has jurisdiction is of great importance be-

cause, absent that jurisdiction, PSERS is immune from suit in this matter pursuant to Article I, Section 11 of the Pennsylvania Constitution. *Scientific Games II,* —— Pa. at ——, 66 A.3d at 756. Article I, Section 11 states that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. art. I, § 11.[9] Section 1702(b) of the Code reaffirms the Commonwealth's sovereign immunity except to the extent waived, in pertinent part, for "claims against Commonwealth agencies brought in accordance with section[ ] . . . 1712.1[, 62 Pa.C.S. § 1712.1,] (relating to contract controversies) [10] and Subchapter C (relating to Board of Claims) but only to the extent set forth in this chapter." 62 Pa. C.S. § 1702(b); *see also Scientific Games II,* —— Pa. at ——, 66 A.3d at 756 (stating that the Code reaffirms sovereign immunity subject to "its explicit, limited waiver of such immunity . . . in connection with a coordinate allocation of 'exclusive jurisdiction' to the Board . . . over claims arising from certain contracts entered into by a Commonwealth agency"). "Sovereign immunity [is] a jurisdictional concern vis-à-vis the . . . Code." *Scientific Games II,* —— Pa. at ——, 66 A.3d at 756.

Section 1724 of the Code, located in Subchapter C and added by Act 142 in

---

7. A review of the briefs the parties submitted to the Board on the sovereign immunity issue did not reveal a challenge to the constitutionality of Act 142. Respondents, likewise, do not challenge Act 142's constitutionality before this Court.

8. Our "review is limited to determining whether constitutional rights were violated, errors of law were committed or necessary findings are supported by substantial evidence." *Data–Quest,* 972 A.2d at 77 n. 4.

9. Sovereign immunity is "fundamental pursuant to Article I, Section 11 of the Pennsylva-

nia Constitution." *Frazier v. Workers' Compensation Appeal Board (Bayada Nurses, Inc.),* 616 Pa. 592, 602, 52 A.3d 241, 247 (2012).

10. Section 1712.1 of the Code, in relevant part, indicates that a claim may be filed "with the contracting officer in writing for controversies arising from a contract entered into by the Commonwealth," such claims "shall be filed within six months of the date it accrues," and the failure to file a claim or the filing of an untimely claim renders the right to assert the claim waived. 62 Pa.C.S. § 1712.1.

2002, sets forth the Board's jurisdiction and provides, in relevant part:

(a) Exclusive jurisdiction.—The board shall have exclusive jurisdiction to arbitrate claims arising from all of the following:

(1) A contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with [S]ection 1712.1 (relating to contract controversies).

(2) A written agreement executed by a Commonwealth agency and the Office of Attorney General in which the parties expressly agree to utilize the board to arbitrate disputes arising from the agreement.

(3) Unless otherwise provided for by law, a contract entered into by a Commonwealth agency involving real property interest in which the Commonwealth agency is the respondent.

. . . .

(c) Limitations.—The board shall have no power and exercise no jurisdiction over a claim asserted under subsection (a)(1) unless it is filed with the board in accordance with [S]ection 1712.1. The board shall have no power and exercise no jurisdiction over a claim asserted against a Commonwealth agency under subsection (a)(2) or (3) unless the claim was filed with the board within six months after it accrued. The board shall have no power and exercise no jurisdiction over claims for payment or damages to providers of medical assistance services arising out of the operation of the medical assistance program established by the act of June 13, 1967 (P.L. 31, No. 21), known as the Public Welfare Code.

62 Pa.C.S. § 1724. Prior to Act 142, the Board of Claims Act described the Board as having "exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more." *Former* 72 P.S. § 4651–4. In addition to moving the Board's jurisdictional provisions into the Code and revising that language, Act 142 amended Section 102 of the Code, which defines the applicability of "Part I. Commonwealth Procurement Code," by adding, *inter alia*, subsection (f.1), providing: "Application to loans.—This part does not apply to loans. For the purpose of this part, a loan is the disbursement of funds by the Commonwealth to any person where the principle amount disbursed is required to be repaid to the Commonwealth, with or without interest, under an agreement." 62 Pa.C.S. § 102(f.1).

### b. Parties' arguments

Telwell argues that it is well-settled that the Board has broad jurisdiction to consider both Code and non-Code contract disputes. *Hanover Insurance*, 35 A.3d at 855; *Data–Quest*, 972 A.2d at 78–80. Telwell maintains that where, as here, a contract claim is filed pursuant to and in conformity with Chapter 17 of the Code the Board has jurisdiction and PSERS's sovereign immunity is waived per Section 1702 of the Code. According to Telwell, the Board erred in relying on Section 102(f.1), which must be strictly construed, to hold that the Code did not apply to loan agreements because that Section conflicts with the specific jurisdictional provisions found in Chapter 17 of the Code, which do not expressly exclude loan agreements from the Board's jurisdiction.[11] Telwell argues

---

11. Telwell notes that Section 1724(c) places certain limitations on the Board's jurisdiction

that the fact that both Section 102(e) [12] and Section 1724(c) expressly exclude certain claims against the Department of Public Welfare (DPW) made by medical services providers under the medical assistance program established by the Public Welfare Code [13] from both the Code and the Board's jurisdiction, respectively, supports its position that any restriction to the Board's jurisdiction must be found in Chapter 17. Telwell asserts that, because there is an irreconcilable conflict between Section 102 and Chapter 17, this Court should utilize the rules of statutory construction to ascertain which provision the General Assembly intended to prevail. Telwell argues that applying the principles set forth in the Statutory Construction Act of 1972(SCA), 1 Pa.C.S. §§ 1501–1991, the General Assembly's intent was not to restrict the Board's jurisdiction and waive sovereign immunity where doing so would require the repudiation of the long standing public policy of providing a method of redress to those who contract with the Commonwealth.

Alternatively, Telwell argues that the Board has jurisdiction pursuant to Section 1724(a)(3) because Telwell signed the "Note" secured by a mortgage on Telwell's real property in exchange for the loan from PSERS. Because the Note arguably gave PSERS a real property interest in Telwell's property, in which PSERS would be a respondent, the Board should have found that it had jurisdiction based on Section 1724(a)(3).

Respondents assert that the Board correctly interpreted Section 102(f.1) as excluding loans from the Board's jurisdiction. Respondents conclude that, because the Commonwealth's waiver of sovereign immunity in contract matters is limited to those which fall within the Board's jurisdiction and the Board does not have jurisdiction to consider the Restated Claim, that claim is barred by sovereign immunity, at least as to PSERS. *Scientific Games II*, —— Pa. at ——, 66 A.3d at 756. Respondents also assert that Telwell waived its alternative basis for jurisdiction pursuant to Section 1724(a)(3) (signing the Note converted the loan to an interest in real property), because Telwell did not raise it at any point prior to its brief to this Court. Even if the issue were not waived, Respondents contend that the Board would still lack jurisdiction because Section 1724(a)(3) states that the Board has jurisdiction over contracts involving real property interests "[u]nless otherwise provided by law," 62 Pa.C.S. § 1724(a)(3), and Section 102(f.1) provides otherwise.

## IV. Analysis

Pennsylvania Courts have long recognized the importance of the Board's jurisdiction in abrogating sovereign immunity so as to provide a forum for those who contract with the Commonwealth. In *Employers Insurance of Wausau v. Department of Transportation*, 581 Pa. 381, 384–85, 865 A.2d 825, 827–28 (2005), our Supreme Court addressed whether a surety for a contractor could bring a claim before the Board based on equitable subrogation

and Section 1711.1, 62 Pa.C.S. § 1711.1, specifically excludes challenges based on Section 521 of the Code, 62 Pa.C.S. § 521 (permitting a Commonwealth agency to cancel a request for proposal and any award granted thereunder).

**12.** Section 102(e) of the Code states that Part I, i.e., the Code, shall not "apply to medical

assistance provider agreements administered by the Department of Public Welfare or to participating provider agreements entered into by the Department of Health." 62 Pa. C.S. § 102(e).

**13.** Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101–1503.

and assignment of the contractor's rights. In holding that the Board had jurisdiction, the Supreme Court noted the history of the Board, indicating that the Legislature created the Board "in 1937, and conferred upon it the exclusive power to arbitrate claims arising from contracts entered into by the Commonwealth" and to be "an independent administrative body" "to adjudicate claims arising from contracts entered into by the Commonwealth." *Id.* at 392, 865 A.2d at 832. Further, the Board decides contract claims, which sound in both assumpsit and equity, regardless of the claims' form. *Id.* at 393, 865 A.2d at 832–33. The Supreme Court held that the Board's jurisdiction set forth in Section 1724(a)(1) is substantively identical to the former Section 4 of the Board of Claims Act, *former* 72 P.S. § 4651–4. *Wausau,* 581 Pa. at 389 n. 7, 865 A.2d at 830 n. 7.

This Court has also broadly construed the Board's jurisdiction to include claims for damages on the theories of promissory estoppel and quasi-contract. *See Data–Quest,* 972 A.2d at 78–80. In *Data–Quest,* we held that the Board had jurisdiction over a quasi-contract claim by computer software contractor against Department of Health, which declined to purchase software specifically designed for that Department.

Based upon the expansive construction of the Board's jurisdiction, which gives effect to the public policy of providing a method of redress to those who contract with the Commonwealth, this Court recently concluded that the Board has jurisdiction over contracts made with a Commonwealth agency, even if the contracts are not made pursuant to the Code. In *Hanover Insurance* an alternate employer and its liability insurer (petitioners) brought an action in this Court's original jurisdiction seeking a declaration that the State Workers' Insurance Fund (SWIF)

was required to represent them pursuant to an alternate employer endorsement in a workers' compensation and employer's liability policy (Policy). *Hanover Insurance,* 35 A.3d at 850–51. The Commonwealth entities asserted that the matter fell within the Board's exclusive jurisdiction, and the petitioners argued that the Board did not have jurisdiction because they were not "contractors" pursuant to Section 1712.1 of the Code and there was no contract between petitioners and SWIF. *Id.* at 850, 852. This Court agreed with the Commonwealth entities that the matter fell within the Board's jurisdiction. *Id.* at 851. Citing, *inter alia, Wausau* and *Data–Quest,* we "note[d] that Pennsylvania courts have broadly construed the statute conferring jurisdiction o[n] the Board" and that accepting petitioners' claim "would repudiate long standing public policy to provide a method of redress to claimants who contract with the Commonwealth." *Id.* at 853–54. Moreover, we observed that

> interpreting the ... Code as severely restricting the Board's jurisdiction to matters involving the Commonwealth's purchase of goods or services arguably deprives all parties who enter into other types of agreements with the Commonwealth, including those who purchase goods or services *from* the Commonwealth, of a remedy in the event of a breach.

*Id.* at 855 (emphasis in original). Accordingly, we held that "in light of the well-settled precedent and the *lack of clear legislative intent,* ... the provisions of the ... Code have not altered or limited the exclusive jurisdiction of the Board." *Id.* at 856 (emphasis added).

Most recently, our Supreme Court, in *Scientific Games II,* focused on the scope of the Board's exclusive statutory jurisdiction. In *Scientific Games II,* a winning bidder requested specific performance,

rather than monetary damages, after the request for proposals and the award associated with that request were cancelled by the Department of General Service (DGS). The bidder filed an original jurisdiction action in this Court, asserting that it could seek specific performance pursuant to Section 1724(d) of the Code, 62 Pa.C.S. § 1724(d) (stating that nothing in that section "shall preclude a party from seeking nonmonetary relief in another forum as provided by law"). In denying preliminary objections to this Court's jurisdiction, we agreed with the bidder that Section 1724(d) provided this Court with jurisdiction because the bidder was not seeking monetary damages. *Scientific Games International, Inc. v. Department of Revenue*, 34 A.3d 307, 313 (Pa.Cmwlth.2011) (*Scientific Games I*). However, our Supreme Court reversed on appeal, holding that Section 1724(d) did not "establish a basis for judicial review or relief broader than that which is contained in the provisions of law which are to be left un-precluded" and "does not itself contain any waiver of sovereign immunity." *Scientific Games II*, —— Pa. at ——, 66 A.3d at 754. Thus, the Supreme Court concluded, the Commonwealth Court did not have jurisdiction over the bidder's claim.[14] *Id.* Furthermore, the Supreme Court stated that the "Code reaffirmed sovereign immunity subject to its explicit, limited waiver of such immunity ... in connection with a coordinate allocation of 'exclusive jurisdiction' to the Board ... over claims arising from certain contracts entered into by a Commonwealth agency." *Id.* at ——, 66 A.3d at 756. Because the question of whether the Board would have jurisdiction to consider a non-Code contract was not before it in *Scientific Games II*, the Supreme Court specifically declined to rule

on that issue and stated that *Hanover Insurance* remained the prevailing law. *Id.* at n. 16, 66 A.3d at 753 n. 16.

In accordance with *Scientific Games II*, we are mindful that the touchstone of interpreting statutory language is to ascertain and effectuate the intent of the Legislature. Section 1921(a) of the SCA, 1 Pa. C.S. § 1921(a); *Scientific Games II*, —— Pa. at ——, 66 A.3d at 753. A guiding principle of statutory construction is that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). It is with these principles in mind that we examine Section 102(f.1).

Due to the passage of Act 142, the Board's enabling and jurisdictional provisions are now found in Chapter 17 of the Code and fall within Part I of Title 62. The plain language of Section 102(f.1) expressly states that Part I of Title 62, "Procurement," in which the Code is found, does not apply to loans made by the Commonwealth or a Commonwealth agency. 62 Pa.C.S. § 102(f.1). It would be contrary to the established principles of statutory construction for the Court not to give meaning to the plain language of Section 102(f.1) and hold, as Telwell urges, that the terms of the Code apply to Telwell's contract with PSERS, which involved a loan as defined by the Code. Although the Board questioned whether the General Assembly intended to limit or reduce the Board's jurisdiction from what it has been historically when the General Assembly repealed the Board of Claims Act and placed the Board's enabling legislation in the Code, it did not question that this is what the General Assembly achieved when it added subsection (f.1) to Section 102 and

---

**14.** On the merits, the Supreme Court held that the General Assembly "deliberately excluded ... cancellations from the scope of right of protest" and that "the General As-

sembly wished to rely on the immunity reaffirmed in the ... Code to foreclose these challenges altogether." *Scientific Games II*, —— Pa. at ——, 66 A.3d at 758.

added the language setting forth the Board's jurisdiction in the Code.

 Unlike in the above cited cases, and *Hanover Insurance* in particular, where the contract was not expressly excluded from the applicability of the Code, here, pursuant to Section 102(f.1), the Code is expressly made inapplicable to Commonwealth loans. Section 102(f.1) provides the "clear legislative intent" missing in *Hanover Insurance. Hanover Insurance,* 35 A.3d at 856. While there was some ambiguity in *Hanover Insurance* that permitted this Court to engage in statutory interpretation to ascertain the General Assembly's intent, such ambiguity cannot be found here. Telwell's Restated Claim is based on its allegation that Respondents breached the terms of their contract by charging Telwell more interest on Telwell's *loan* than required by the *loan* documents. Although Telwell now asserts that the contract was for an interest in real property and falls within the express grant of jurisdiction in Section 1724(a)(3), Telwell did not raise this issue before the Board for its consideration. *See* Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a) (stating that, with certain exceptions not applicable here, a party "may not raise upon appeal any . . . question not raised before the agency . . . unless allowed by the court upon due cause shown"); *Chapman v. Unemployment Compensation Board of Review,* 20 A.3d 603, 611 (Pa.Cmwlth.2011) (holding that a petitioner waives an appellate argument when the petition failed to raise the error before the agency below). Thus, we will not address Telwell's alternative basis for jurisdiction raised for the first time on appeal.[15] *Id.*

Although, as discussed above, the language of Section 102(f.1), which specifically

provides that "this part does not apply to loans" is not ambiguous, Telwell questions whether the removal of medical assistance provider agreements for services established by the Public Welfare Code and administered by DPW from the Code's applicability and the Board's jurisdiction, which is set out in both Section 1724(c) and Section 102(e), can be interpreted to show the Legislature's intent that agreements not specifically excluded by both Section 1724(c) and Section 102 would therefore fall within the Board's jurisdiction. However, we agree with the Board that the history of Act 142 shows that the reference to the medical assistance provider agreements in both Section 102(e) and Section 1724(c) resolved an ongoing jurisdictional controversy over what forum would hear claims made against DPW by medical assistance providers. (Board Op. at 9 and n. 3 (citing *Department of Public Welfare v. Presbyterian Medical Center of Oakmont,* 583 Pa. 336, 353, 877 A.2d 419, 430 (2005) (holding that the Board lacked jurisdiction over reimbursement claims from medical assistance programs even prior to the Act 142 amendments to the Code)).) This jurisdictional controversy was created because, even though Section 102(e) of the Code excluded the medical assistance agreements from its applicability prior to Act 142, the Board of Claims Act described the Board's jurisdiction in such broad terms that it arguably included such contracts within the Act's jurisdiction. When Act 142 repealed Section 4 of the Board of Claims Act and placed the Board's enabling and jurisdictional provisions in the Code, specifically stating that medical assistance provider agreements for services established by the Public Welfare Code and administered by DPW are excluded from the Code's applicability and the

---

15. Even if we did address the issue, we would agree with PSERS that Section 1724(a)(3) does not apply here because that Section

grants jurisdiction "[u]nless otherwise provided for by law," 62 Pa.C.S. § 1724(a)(3), and Section 102(f.1) provides otherwise.

Board's jurisdiction in both Sections 102(e) and 1724(c), respectively, it could have reflected the need to ensure clarity to this jurisdictional controversy. There is no indication of any historic controversy involving the Board's jurisdiction over loans that would require clarification beyond their being excluded under Section 102(f.1). Further, accepting Telwell's position would place the other exclusions set forth in the other subsections of 102 within the Board's jurisdiction, notwithstanding the unambiguous language indicating that the Code does not apply.[16]

Given the clear and unambiguous language of Section 102(f.1), this Court is constrained to hold that the Board does not have subject matter jurisdiction over the Restated Claim. Therefore, PSERS is entitled to sovereign immunity pursuant to Article I, Section 11 of the Pennsylvania Constitution and Section 1702(b) of the Code.[17] *Scientific Games II,* —— Pa. at ——, 66 A.3d at 756. In so holding, however, we agree with our Supreme Court's statement that

> some immunity applications may be distasteful to those who may discern government wrongdoing, or at least un-

remediated collateral injury to private concerns resulting from governmental changes. In light of the constitutional basis for the General Assembly's allocation of immunity, however, the area implicates the separation of powers among the branches of government also crafted by the framers. Thus, in the absence of constitutional infirmity, courts are not free to circumvent the Legislature's statutory immunity directives pertaining to the sovereign.

*Id.* at ——, 66 A.3d at 755 (footnote omitted). Moreover, as explained by the Supreme Court

> it is not our task to evaluate the wisdom of the Legislature's decision to immunize [loan contracts] from challenge, nor do we lend our approval to [such actions] in the present factual scenario.... [W]e conclude only that the design of the ... Code evidences the legislative intent to immunize [loan contracts].

*Id.* at ——, 66 A.3d at 759 n. 29.

### V. Telwell's claims against Grandbridge

■■■ The parties agree that if the Board does not have jurisdiction, the

---

**16.** Pursuant to Section 102, the Code does not apply to: contracts between the Commonwealth and its political subdivisions or other governments; "the entity created by the act of August 7, 1963 (P.L. 549, No. 290), referred to as the Pennsylvania Higher Education Assistance Agency Act," *as amended*, 24 P.S. §§ 5101–5112, i.e., the Pennsylvania Higher Education Assistance Agency, 24 P.S. § 5101; and grants furnished by the Commonwealth. 62 Pa.C.S. § 102(a), (d), (f).

**17.** Pursuant to Section 761(a)(1)(iv) of the Judicial Code, 42 Pa.C.S. § 761(a)(1)(iv), it appears that there could be an argument that this Court would have original jurisdiction over Telwell's claim against PSERS because Section 761 provides that we "have original jurisdiction of all civil actions or proceedings: [a]gainst the Commonwealth government ... except: ... actions or proceedings conducted pursuant to the ... Board of Claims Act." *Id.*

We note that the General Assembly has not amended Section 761(a)(1)(iv) to reflect that it repealed the Board of Claims Act and that the Board's jurisdictional provisions are now found in the Code. However, even if we were to *sua sponte* transfer this case to our original jurisdiction and address Telwell's claim against PSERS, the result would be the same because our Supreme Court has held that, for contract matters filed against the Commonwealth, the General Assembly has waived sovereign immunity *only* for matters that fall within the Board's exclusive jurisdiction. *Scientific Games II,* —— Pa. at ——, 66 A.3d at 756. Because we have held that the Board does not have jurisdiction over the loan contract in the present matter, PSERS is entitled to sovereign immunity, and any claim against PSERS in our original jurisdiction would not be sustainable.

Board erred by not transferring Telwell's claims against Grandbridge, a private entity not entitled to sovereign immunity, to the trial court for consideration. The Board is considered a judicial tribunal. *Wausau,* 581 Pa. at 388 n. 6, 865 A.2d at 830 n. 6. Rule 213(f) of the Pennsylvania Rules of Civil Procedure provides:

> When an action is commenced in a court which has no jurisdiction over the subject matter of the action it shall not be dismissed if there is another court of appropriate jurisdiction within the Commonwealth in which the action could originally have been brought but the court shall transfer the action at the cost of the plaintiff to the court of appropriate jurisdiction. It shall be the duty of the prothonotary or clerk of the court in which the action is commenced to transfer the record together with a certified copy of the docket entries to the prothonotary or clerk of the court to which the action is transferred.

Pa. R.C.P. No. 213(f). In *Wausau,* the Supreme Court held that this Court should not have dismissed a petitioner's claim for lack of jurisdiction, but transferred it to the Board pursuant to Rule 213(f). *Wausau,* 581 Pa. at 388 n. 6, 865 A.2d at 830 n. 6. Accordingly, having concluded that the Board does not have subject matter jurisdiction over the Restated Claim, we remand to the Board for the claim against Grandbridge to be transferred to the trial court for further proceedings.

## VI. Conclusion

For the foregoing reasons, we agree with the Board that it does not have jurisdiction over the Restated Claim pursuant to Section 102(f.1), which expressly removes loans from the Code's applicability, because this matter is based upon a contract regarding the loan PSERS made to Telwell. Therefore, we affirm the Board's Order to that extent. However, because the Restated Claim also involves breach of contract allegations against Grandbridge, a private entity not entitled to sovereign immunity, the Board should have transferred those claims to the trial court for that court's consideration. Accordingly, the Board's Order dismissing the Restated Claim against Grandbridge is vacated, and we remand this matter to the Board to transfer it to the trial court for further proceedings.

## ORDER

**NOW,** April 2, 2014, the Order of the Board of Claims (Board) dismissing with prejudice the "Restated Claim for Breach of Claim/Duty of Good Faith" (Restated Claim) against the Public School Employees' Retirement System (PSERS) and Grandbridge Real Estate Capital LLC (Grandbridge) filed by Telwell, Inc. (Telwell) for lack of subject matter jurisdiction is hereby **AFFIRMED** as to PSERS, but **VACATED** as to Grandbridge. In accordance with the foregoing opinion, we **REMAND** this matter to the Board to transfer the Restated Claim against Grandbridge to the Court of Common Pleas of Philadelphia County, pursuant to Pennsylvania Rule of Civil Procedure No. 213(f), Pa. R.C.P. No. 213(f), for further proceedings.

Jurisdiction relinquished.